IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE PEREZ-PLASCENCIA, | : | Civil No. 3:26-cv-1914 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN OF ALLENWOOD, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Jose Perez-Plascencia ("Perez-Plascencia") initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Perez-Plascencia contends that the Federal Bureau of Prisons ("BOP") improperly refused to consider him for prerelease custody placement under the five factors of 18 U.S.C. § 3621(b). (*Id.* at 6). For the reasons that follow, the Court will deny the habeas petition.

## I. Background

### A. Perez-Plascencia's Criminal History

Perez-Plascencia is serving a 96-month term of imprisonment imposed by the United States District Court for the Eastern District of North Carolina for his conviction of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and possession with intent to distribute 50 grams or more of methamphetamine and aiding and abetting. (Doc. 8-3, Public Information Inmate Data). According to BOP documentation submitted by Respondent, Perez-Plascencia's projected

release date, via the First Step Act ("FSA"), is February 23, 2029. (*Id.*; *see also* Doc. 8-7, FSA Time Credit Assessment).

B. Administrative Remedy History

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Perez-Plascencia filed one administrative remedy. (Doc. 8-4, Administrative Remedy Generalized Retrieval).

On March 18, 2026, Perez-Plascencia filed administrative remedy 1272095-F1 with the institution, requesting to be transferred closer to his home. (Doc. 8-4, at 3). The institution denied the remedy. (*Id.*).

Perez-Plascencia filed an appeal to the Regional Office, designated as administrative remedy 1272095-R1. (*Id.*). The Regional Office closed the remedy, and a response was provided for information/explanation purposes only. (*Id.*).

Perez-Plascencia filed an appeal to the Central Office, designated as administrative remedy 1272095-A1. (*Id.* at 4). On June 15, 2026, the Central Office rejected the remedy for failing to include a copy of the regional appeal and advised Perez-Plascencia to resubmit his filing in the proper form. (*Id.*).

C. First Step Act Time Credits

Perez-Plascencia has earned time credits under the First Step Act. (Doc. 8-5, Individualized Needs Plan; Doc. 8-7, FSA Time Credit Assessment). The BOP conducted a First Step Act Time Credit Assessment on August 23, 2026. (Doc. 8-7). Perez-Plascencia

has earned 165 days of FSA time credits, which have been applied towards his early release. (*Id.*).

D. Facts Related to the Second Chance Act

On August 14, 2026, Perez-Plascencia's Unit Team conducted an Individualized Needs Plan-Program Review. (Doc. 8-5). At that time, the Unit Team reviewed Perez-Plascencia for prerelease placement under the five factors of the Second Chance Act of 2007, codified at 18 U.S.C. §§ 3621 and 3624.[1] (*Id.*). The Unit Team considered and evaluated the five factors as follows: (1) facility resources: bed space availability, transitional assistance (housing/medical/mental health); (2) offense: conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and possession with intent to distribute 50 grams or more of methamphetamine and aiding and abetting; 96 month term of imprisonment and 5 year term of supervision; (3) prisoner: one incident report, constant programming, Institution Hearing Program ("IHP") participant; (4) court statement: no statement from the Eastern District of North Carolina; and (5) sentencing commission: N/A. (*Id.* at 4). As a result of the review, the Unit Team determined that

[1] The Second Chance Act states in pertinent part as follows:

> The [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

*See* 18 U.S.C. § 3624(c).

Perez-Plascencia did not qualify for prerelease placement under the Second Chance Act due to his participation in the Institution Hearing Program. (*Id.*).

The Unit Team noted that Perez-Plascencia began participating in the Institution Hearing Program on September 18, 2025. (*Id.* at 2).

E. Claims Raised in the Habeas Petition

In his Section 2241 petition, Perez-Plascencia asserts that the BOP improperly refused to consider him for prerelease custody placement under the five factors of 18 U.S.C. § 3621(b). (Doc. 1, at 6). He argues that "[t]he BOP has [improperly] added to FSA that an inmate must wait 18 months at a facility before he can be transferred." (*Id.*).

Respondent asserts that the Section 2241 petition should be dismissed because Perez-Plascencia failed to exhaust his administrative remedies. (Doc. 8). Alternatively, Respondent argues that the petition fails on the merits because the BOP properly considered Perez-Plascencia for prerelease custody under the five factors of § 3621(b); Perez-Plascencia is not eligible for prerelease placement due to his IHP status; and Perez-Plascencia has no legal entitlement to prerelease custody placement. (*Id.*).

## II. **Discussion**

A. Administrative Exhaustion

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ

of habeas corpus pursuant to [Section] 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. *See Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction. *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw*, 682 F.2d at 1052). Exhaustion is also excused when it would be futile. *See Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see also Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019). "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court." *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002)).

To exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in

the Code of Federal Regulations. *See generally* 28 C.F.R. §§ 542.10-542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. *See id.* §§ 542.13-542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an appeal to the Regional Director, using the appropriate form. *See id.* § 542.15(a). And, finally, if the inmate is not satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. *See id.* An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. *See id.* (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the record reflects that Perez-Plascencia filed one administrative remedy—number 1272095—requesting to be transferred closer to his home. (Doc. 8-4). Upon initial review, the institution denied the remedy. (*Id.* at 3). Perez-Plascencia filed an appeal to the Regional Office, and the Regional Office closed the remedy, and a response was provided for information/explanation purposes only. (*Id.*). Perez-Plascencia then filed an appeal to the Central Office, and the Central Office rejected the remedy for failing to include a copy of the regional appeal and advised Perez-Plascencia to resubmit his filing in the proper form. (*Id.* at 4).

Perez-Plascencia is challenging the validity of the BOP's policy that, according to him, categorically excludes him from placement in prerelease custody based on his status as an IHP participant. (Doc. 1, at 6). Because his claims ostensibly involve issues of purely statutory construction, administrative exhaustion is excused. *See Vasquez*, 684 F.3d at 433-34 (citing *Bradshaw*, 682 F.2d at 1052).

B. Prerelease Custody Claim—Merits

Transfer of BOP prisoners to prerelease custody is governed by 18 U.S.C. § 3624 and 18 U.S.C. § 3621. Section 3624 states, in relevant part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The decision of whether to transfer an inmate to prerelease custody, however, is left to the discretion of the BOP. 18 U.S.C. § 3624(c)(4). When exercising this discretion, the BOP must conduct an individualized assessment of whether an inmate should be transferred to prerelease custody based on the following factors:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 247 (3d Cir. 2005).

The record in this case clearly establishes that Perez-Plascencia's Unit Team, in its August 14, 2026 review, gave him individualized consideration consistent with the five factors of Section 3621(b). (Doc. 8-5). Specifically, the Unit Team considered and evaluated the five factors as follows: (1) facility resources: bed space availability, transitional assistance (housing/medical/mental health); (2) offense: conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and possession with intent to distribute 50 grams or more of methamphetamine and aiding and abetting; 96 month term of imprisonment and 5 year term of supervision; (3) prisoner: one incident report, constant programming, Institution Hearing Program ("IHP") participant; (4) court statement: no statement from the Eastern District of North Carolina; and (5) sentencing commission: N/A. (*Id.* at 4). As a result of the review, the Unit Team determined that Perez-Plascencia did not qualify for prerelease placement under the Second Chance Act due to his participation in the Institution Hearing Program. (*Id.*).

The BOP has discretion in placing inmates in prerelease custody under the Second Chance Act. Here, the BOP conducted the required five-factor review, exercised its discretion, and found that Perez-Plascencia did not qualify for prerelease placement. Nothing in Section 3624 or Section 3621(b) entitles an inmate to any guaranteed placement in prerelease custody. Ultimately, "the statute indicates that the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621." *Woodall*, 432 F.3d at 245' *see also Woodall*, 432 F.3d at 244-51 (holding, in exercising its discretion to make halfway house placement decisions, the Bureau must consider the factors set forth in § 3621(b); "[h]owever, that the [Bureau] may assign a prisoner to a halfway house does not mean that it must,"); *Beckley v. Miner*, 125 F. App'x 385, 389 (3d Cir. 2005) (holding, "[i]t is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners.").

Having reviewed the assessment, the Court finds that the BOP has complied with Section 3621(b) because it is clear that it has evaluated all five factors that must be considered. Perez-Plascencia's habeas claim will accordingly be denied.

C. Participation in the Institution Hearing Program

Title 8 U.S.C. § 1228(a) requires the Attorney General to provide special removal proceedings in a manner which assures expeditious removal following the end of the alien's incarceration for the underlying sentence. These procedures are outlined in BOP Program Statement 5111.04, Institution Hearing Program. Foreign born, non-U.S. citizens who are

serving federal sentences are eligible to participate in the Institution Hearing Program. *See* U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 5111.04, Institution Hearing Program (May 23, 2017), https://www.bop.gov/policy/progstat/5111.04_cn1.pdf (last visited Sept. 15, 2026). The IHP is a coordinated effort between the BOP, the United States Immigration and Customs Enforcement, and the Executive Office for Immigration Review. (*Id.*). The program provides procedures to ensure the maximum number of eligible inmates in BOP custody participate in the IHP while serving their sentences to allow ICE "to effect removal immediately upon completion of an inmate's sentence" (to avoid further detaining them once their criminal sentence is completed). Program Statement 5111.04, at 1, 12.

In conducting the five-factor review, Perez-Plascencia's Unit Team also found that he does not qualify for prerelease placement under the Second Chance Act due to his status as an IHP participant. (Doc. 8-4). Perez-Plascencia is a participant in the IHP and has participated since September 18, 2025. (*Id.*). Pursuant to BOP Program Statement 5111.04, inmates designated as participating in the IHP cannot be transferred to Residential Reentry Center placement or home confinement until their hearing is complete. *See* Program Statement 5111.04. Program Statement 5111.04 provides that if an inmate is at a hearing site and participating in the IHP, he "should not be transferred until the hearing is completed." Program Statement 5110.04, at 12. Perez-Plascencia is participating in the IHP and, pursuant to BOP Program Statement 5111.04, he cannot be transferred until the

hearing is complete. If Perez-Plascencia completes the IHP with a determination that he is not subject to removal, he would again be reviewed for potential referral to prerelease custody. Therefore, he is not presently eligible for referral to prerelease custody.

## III. Conclusion

For the foregoing reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 16, 2026